I must respectfully dissent from the majority decision with regard to two issues.
With regard to the medical causation issue, Dr. George Edwards has significant experience as a hand surgeon and specific knowledge about carpel tunnel syndrome. His practice is devoted 100% to the upper extremity, with 85-90% being conditions of the hand and wrist, including carpel tunnel. By way of comparison, the expert on which the majority relies, Dr. Flangan, treats upper extremity conditions in only a third of his patients, and of that group only half involve hand or wrist conditions. Dr. Edwards testified on more than one occasion that he had reviewed the medical records, Mr. Simmons' hearing testimony, Dr. Flanigan's deposition testimony and other materials and not just the job video in arriving at his expert medical opinions that plaintiff's job did not place him at an increased risk of developing carpel tunnel syndrome as there was not evidence of any prolonged periods of repetitive finger flexion in terms of frequency or amount of strain or force or any other activities which might contribute to the development or aggravation of carpel tunnel syndrome. He noted plaintiff did perform forceful activities using his arms but not the finger flexors in forceful repetitive motion that would be required for carpel tunnel syndrome.
Dr. Flanagan's opinion is based mostly on the lack of other risk factors. However, he then admitted some people have no risk factors but still have the condition for an unknown reason. He also was not aware of non-work activities in which plaintiff had previously been involved which he said could have been contributory to the condition. Dr. Flanagan also based his opinion on the general nature of plaintiff's job duties, ie that plaintiff did a lot of gripping, grasping, impact on the hands, but he could not speak in specifics or with a reasonable degree of medical certainty. Clearly Dr. Edwards' opinion should be given greater weight.
On August 29, 2003 defendant's filed a Form 61 Denial. Thereafter, at the mediation on March 4, 2004, among other agreements defendant's without prejudice agreed to pay a maximum of sixteen weeks of benefits or until plaintiff returned to work if sooner and that if defendants did not contest the claim within 60 days of return to work or the sixteen week period, whichever occurred sooner, the case would be deemed accepted. Only the time period in which the contesting of the claim was to occur was set forth in detail, not the manner in which defendants had to contest the claim. When plaintiff's attorney inquired as to whether defendants were still willing to continue paying benefits, he was verbally informed in a timely manner that no additional benefits were going to be paid voluntarily. In my opinion, this constitutes sufficient notice to plaintiff under the mediation agreement of defendants'contesting plaintiff's claim, thereby causing the case to resume its previously denied posture for which a Form 61 Denial was already in effect. Thus, defendants cannot reasonably be found to have accepted this claim.
For these reasons, I respectfully dissent from the majority opinion.
 S/_______________ DIANNE C. SELLERS COMMISSIONER